<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**LOGICAL SOLUTION SERVICES, INC.**,

Plaintiff,

v.

**RICHARD MCMAHON**,

Defendant.

Civil Action No. 24-6276 (ZNQ) (TJB)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon Defendant Richard McMahon's ("Defendant" or "McMahon") Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Motion," ECF No. 9.)  Defendant submitted a brief in support of his Motion ("Moving Br.," ECF No. 9-1) and a Declaration of Richard McMahon ("Declaration," ECF No. 9-2).  Plaintiff Logical Solution Services, Inc. ("Plaintiff" or "Logical Solution Services" or "LSS") filed an opposition ("Opp'n Br.," ECF No. 10-1), as well as a Certification of Victor Cruz ("Certification," ECF No. 10-3.)  Defendant submitted a reply brief. ("Reply Br.," ECF No. 11.)  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1]  For the reasons set forth below, the Court will **DENY** the Motion.

---

[1] Hereinafter, all references to Rules refer to the Federal Rules of Civil Procedure unless otherwise noted.

1

I.     **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed its Complaint on May 20, 2024 against Defendant alleging breach of the duty of loyalty (count one), tortious interference with contractual relations and prospective economic advantage (counts two and three), fraudulent misrepresentation (count four), promissory estoppel (count five), misappropriation of confidential information (count six), violation of the New Jersey Computer Related Offenses Act (count seven), violation of the federal Computer Fraud and Abuse Act (count eight), and conversion (count nine). ("Compl.," ECF No. 1, ¶ 1.) In lieu of filing an answer, on July 26, 2024, Defendant filed the instant Motion. (ECF No. 9.)

Plaintiff is a New Jersey-based logistics services corporation that provides shipping and related services to its clients for the transportation and coordination of cargo. (Compl. ¶ 7.) Defendant is a New York resident who was employed by LSS as its Vice-President of Refrigerated Services. (*Id.* ¶¶ 3, 4, 8.) Defendant was hired by Plaintiff in 2012 and was responsible for managing client accounts and overseeing the coordination of traffic flow for the shipments of client cargo. (*Id.* ¶ 8, 9.)

According to the Complaint, Defendant "attended regular management meetings while at [LSS] where, among other things, client accounts were discussed, and he was privy to discussions regarding business plans to improve and market [Plaintiff's] services." (Compl. ¶ 11.) In 2023, Defendant told Plaintiff's President, Victor Cruz ("Cruz"), that he was retiring. (*Id.* ¶ 13.) As part of his retirement, Defendant agreed to "help transition clients for whom he was responsible so that they remained" clients of Plaintiff. (*Id.* ¶¶ 14, 15.) Defendant also told Cruz that he would not "seek to take any business away" from Plaintiff. (*Id.*) However, Defendant "surreptitiously made plans while still employed with [Plaintiff] to take at least one of [Plaintiff's] clients, . . . M.F., to a competitor of [Plaintiff] that [Defendant] would [later] join as a new employee." (*Id.* ¶ 16.) Soon

after Defendant resigned from Plaintiff, M.F. advised Plaintiff that it would start the process of working with another logistics provider—the same one Defendant now worked for. (*Id.* ¶¶ 18, 19, 22.) The Complaint also alleges that Defendant encouraged other LSS employees to join him at the new logistics provider. (*Id.* ¶ 21.)

Lastly, the Complaint alleges that when Plaintiff asked for return of all of its equipment, Defendant purportedly delayed the return of his work laptop and phone so that he could "wipe[] or erase[] all data on both devices." (*Id.* ¶¶ 23, 24.) Defendant also allegedly failed to return Plaintiff's computer monitors, hard copies of client files, printer, scanner, and shredder. (*Id.* ¶¶ 26, 27.)

## II. APPLICABLE LAW

Pursuant to Rule 12(b)(2), a complaint is subject to dismissal for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). "If the district court does not hold an evidentiary hearing, the plaintiff[] need only establish a prima facie case of personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotations and citation omitted). And "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). Still, "[w]hile disputed issues are construed in favor of the plaintiff, allegations may be contradicted by the defendant through opposing affidavits or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" *Am. Bd. of Internal Med. v. Rushford*, Civ. No. 14-6428, 2015 WL 5164791, at *5 (D.N.J. Sept. 2, 2015) (quoting *Patterson by Patterson v. FBI*, 893 F.2d 595, 603

3

(3d Cir. 1990)). Additionally, "by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). "[T]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). "Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotation marks and citation omitted). More precisely, "[t]he Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)).

Here, the parties agree there is no general jurisdiction over Defendant. (*See* Moving Br 1, 3; Opp'n Br. at 1, 6.) Therefore, the only potential basis for the exercise of personal jurisdiction over Defendant is specific jurisdiction.

The inquiry as to whether a court may exercise specific jurisdiction over a nonresident defendant is tripartite. *See O'Connor*, 496 F.3d at 317. First, "the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *see Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (stating that for specific jurisdiction, the defendant must have "deliberately 'reached out beyond' its home" (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014))). The unilateral activity of a third party cannot satisfy the requirement that the defendant have minimum contacts with the forum state. *See Hanson*, 357 U.S. at 253 (noting that the mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").

Second, if there is purposeful availment by a nonresident defendant, a court may exercise personal jurisdiction over that defendant only when a plaintiff's claims "arise out of or relate to the defendant's contacts" with the forum state. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Third, if the nonresident defendant purposefully avails itself, and the plaintiff's claims arise out of or relate to the defendant's contacts with the forum state, "due process requires . . . that the maintenance of the suit [against the defendant] does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). And in determining whether the requirement to comport with "fair play and substantial

justice" is satisfied, courts evaluate several factors. *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987). A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. *Id.* It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). "[O]nly in rare cases do the minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." *3 Lab, Inc. v. Kim*, Civ. No. 07-1056, 2007 WL 2177513, at *5 (D.N.J. July 26, 2007) (alteration in original) (internal quotations and citations omitted).

### III. ANALYSIS

#### A. Specific Jurisdiction

Defendant moves to dismiss the Complaint for lack of personal jurisdiction under Rule 12(b)(2). (Moving Br. at 1, 3 ("the Complaint fails to allege that McMahon had sufficient contact with New Jersey to render him subject to this Court's jurisdiction")). Defendant argues that the Complaint lacks evidence to show that Defendant purposely directed activities at the forum state. (*Id.* at 6.) For example, Defendant contends that he does not have the requisite minimum contacts with New Jersey in part because his sole connection with New Jersey is that he worked for a New Jersey-based company. (*Id.* at 7–8.) In a declaration accompanying the Motion, Defendant states that eighty percent of his job at LSS included managing M.T., one of Plaintiff's largest companies, with whom he had a prior working relationship. (Declaration ¶¶ 7, 11.) Additionally, Defendant

claims he did not service any customers that performed work in New Jersey, never resided in New Jersey, and never worked in New Jersey. (*Id.* ¶¶ 4, 10, 12.)

In its Opposition, Plaintiff concedes that there is no general jurisdiction over Defendant but maintains that there is an adequate basis for specific jurisdiction. It argues that Defendant routinely created contact with Cruz and other employees of Plaintiff "by way of numerous video calls, telephone calls, and emails and also by traveling to New Jersey." (Opp'n Br. at 1, 6.) Plaintiff contends that such contact with employees in New Jersey occurred at least several times a week, and that Defendant performed work in New Jersey. (*Id.* at 5, 6.) Plaintiff claims that Defendant's contacts arise out of or relate to his conduct with New Jersey because the alleged tortious statements and interference occurred while on calls with its other employees. (*Id.*) Notably, Plaintiff "is not claiming Defendant is subject to specific jurisdiction merely because he worked for a New Jersey employer." (*Id.* at 7.) Instead, Plaintiff argues that the "facts show [] that Defendant did purposefully and routinely initiate contact with New Jersey over his many years with Plaintiff." (*Id.*)

Here, the Court is satisfied that Defendant's activities were more than mere fortuitous contacts with New Jersey. The Complaint alleges that Defendant "attended regular management meetings while at [Plaintiff] where, among other things, client accounts were discussed, and he was privy to discussions regarding business plans to improve and market [Plaintiff's] services." (Compl. ¶ 11). The Complaint separately asserts that Defendant solicited Cruz, (*id.* ¶¶ 13, 14, 15), and other fellow employees in an attempt to persuade them to join Defendant's new employer. (*Id.* ¶ 21). In addition to the allegations in the Complaint, Plaintiff responded to Defendant's Declaration with a certification from Cruz[2] attesting that Defendant (1) sometimes performed work

---

[2] "A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain

in New Jersey, (2) initiated contact with Cruz and other employees in New Jersey via telephone calls, video calls, and emails, and (3) directly made false representations to Cruz. (Certification ¶¶ 3–6). The Court is persuaded by the foregoing that Defendant purposefully availed himself of the New Jersey forum.

The Court is also satisfied that Plaintiff's claims arise out of or relate to Defendant's purposeful contacts with New Jersey. Plaintiff's claims are all related to Defendant's behavior while employed by LSS and connected to the fact that Defendant reached out to Cruz and other employees of LSS in New Jersey. Defendant's purported fraudulent misrepresentations either took place while he was physically in New Jersey or during phone calls that he initiated to New Jersey. Such misrepresentations are a direct but-for cause of Plaintiff's alleged injuries. *See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) ("Where the contacts evaluated are those that give rise to the litigation, even one contact with the forum may be enough to justify jurisdiction as long as the other criteria are met."). Accordingly, the Court finds that Plaintiff's claims arise out of or relate to Defendant's contacts with the forum.

Lastly, there is nothing before the Court to show that its exercise of jurisdiction over Defendant would offend traditional notions of fair play and substantial justice. *See id.* ("Once the plaintiff has made out a prima facie case of minimum contacts, as here, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (quotation marks omitted)); *3 Lab, Inc.*, 2007 WL 2177513, at *5. The Court is therefore satisfied that Plaintiff has met its burden at this stage to demonstrate that the Court may

---

its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004) (quoting *Patterson v. FBI*, 893 F.2d 595, 603–604 (3d Cir. 1990)).

exercise specific jurisdiction over Defendant. *See Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 182 (D.N.J. 2016) (holding that there was personal jurisdiction over the defendant because the plaintiff alleged that the defendant used his contacts to steal clients, employees, and defame plaintiff's business, and there was no doubt that the defendant should have anticipated that he could be sued in New Jersey).

### B.   *Calder* Effects Test

Plaintiff separately argues that there is personal jurisdiction under the *Calder* effects test because "the Complaint sets forth that Defendant committed several intentional torts centered around the unlawful taking of [Plaintiff's] largest client, causing it substantial damage in New Jersey in the form of loss of significant revenue." (Opp'n Br. at 8; Certification at ¶¶ 7–10). Plaintiff argues that an inference can be made that Defendant expressly aimed his tortious conduct at New Jersey because he made false representations to Plaintiff. (Opp'n Br. at 9 (citing *Lawn Doctor, Inc. v. Branon*, Civ. No. 07-4735, 2008 WL 2064477, at *4–6 (D.N.J. May 14, 2008))). Lastly, Plaintiff contends that there is jurisdiction under the *Calder* effects test based on the false communications made by Defendant." (*Id.* at 11 (citing *Miller v. McMann*, 89 F. Supp. 2d 564, 567 (D.N.J. 2000))).

Defendant argues that his alleged tortious conduct cannot support the exercise of personal jurisdiction under the *Calder* effects test because Defendant did not expressly aim his conduct at New Jersey. (Moving Br. at 11.) Defendant cites *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d. Cir. 1998), as instructive. (*Id.* at 10.)[3]

---

[3] In Reply, Defendant argues that "Plaintiff's alleged basis for specific jurisdiction supports only two of its nine causes of action." (Reply Br. at 1–3.) Defendant also argues that Plaintiff failed to demonstrate a connection between Defendant's contacts with New Jersey and his alleged tortious conduct, and that Plaintiff has not successfully pled facts to support jurisdiction under the *Calder* effects test. (*Id.* at 3–7.)

9

"The [*Calder*] effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth"; the effects test emphasizes the *effects* a defendant's actions have in the forum state. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Under *Calder*, a court considers whether: "(1) the defendant committed an intentional tort; (2) the forum was the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant 'expressly aimed' the tortious activity at the forum state." *Id.* (citing *IMO Indus.*, 155 F.3d at 265–66). To establish that a defendant "expressly aimed" conduct at a forum, "the plaintiff has to demonstrate [that] 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Marten*, 499 F.3d at 298 (quoting *IMO Indus.*, 155 F.3d at 266). If a plaintiff fails to show that the defendant "manifest[ed] behavior intentionally targeted at and focused on the forum, the plaintiff fails to establish jurisdiction under the [*Calder*] effects test." *Id.* (alteration in original) (internal quotations and citations omitted).

Here, the Court agrees with Plaintiff that it has jurisdiction over Defendant under the *Calder* effects test. The Complaint explicitly alleges that Defendant committed intentional torts, with New Jersey as the focal point of the harm suffered by Plaintiff, and with Defendant aiming the tortious activity at New Jersey. Count Two alleges tortious interference with contract whereby Defendant intentionally caused harm to Plaintiff. (Compl. ¶¶ 36–41.) Count Three alleges tortious interference with prospective economic advantage as a result of the same conduct. (*Id.* ¶¶ 42–46.) Count Four alleges fraudulent misrepresentation and notes that Defendant made a "material misrepresentation to [Plaintiff]" with falsity. (*Id.* ¶¶ 47–50.) Count Nine alleges conversion as a result of Defendant "wrongfully interfering with [Plaintiff's] right by wiping all data from the

computer and iPhone and failing to return the client files, computer monitors, printer, scanner, and shredder." (*Id.* ¶¶ 67–70.)

More specifically, the Complaint states that Defendant "solicited and/or encouraged or guided [one of Plaintiff's] client[s] to cease doing business with [Plaintiff] and to use the services of a [Plaintiff] competitor instead that McMahon would become employed with, all in breach of his common law duty of loyalty to [Plaintiff]." (*Id.* ¶ 38.). The Complaint also states that Defendant's "intentional interference has caused loss of the benefits of the contract and of prospective economic gain through the loss of revenue from the contract." (*Id.* ¶ 40.) As alleged, Defendant promised Cruz that he would help transition clients and not seek to take them away from Plaintiff, (*id.* 15-16), but then "[c]ontrary to [Defendant's] representations to Cruz, . . . [Defendant] surreptitiously made plans while still employed with [Plaintiff] to take at least one of [Plaintiff's] clients. . . to a competitor." (*Id.* ¶ 16).

It is clear from the Complaint that Defendant should have anticipated that the focal point of the harm suffered by Plaintiff as a result of the misrepresentations and intentional conduct of Defendant is in New Jersey. For example, Defendant will suffer financial loss in New Jersey as a result of its largest client leaving. It can also be inferred from the allegations in the Complaint that Defendant expressly aimed his conduct at New Jersey given that he contacted M.F., employees of Plaintiff, and Cruz. As a business executive, Plaintiff should have foreseen that the harm resulting from his contacts would be felt in New Jersey. *See Moore v. St. Paul Companies, Inc.*, Civ. No. 94-1329, 1995 WL 11187, at *7 (D.N.J. Jan. 3, 1995) ("[I]t was foreseeable to [defendant] that the harm from his misrepresentation in Minnesota would accrue in New Jersey."); *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252, 1256 (N.J. 1989) (A defendant whose fraudulent communication by mail and telephone harms a New Jersey plaintiff is subject to personal jurisdiction in its courts).

Thus, when Defendant made material misrepresentations to Plaintiff and Cruz, Defendant became subject to personal jurisdiction in New Jersey.[4]

In conclusion, because Plaintiff satisfies each element of the *Calder* effects test, there is specific jurisdiction over Defendant in New Jersey on this basis as well.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court will **DENY** Defendant's Motion. (ECF No. 9.) An appropriate Order will follow.

Date: February 7, 2025

                                                   s/ Zahid N. Quraishi
                                                   **ZAHID N. QURAISHI**
                                                   **UNITED STATES DISTRICT JUDGE**

---

[4] The Court also notes that this case is factually distinct from *IMO Industries v. Kiekert AG*, 155 F.3d 254, 258–59 (3d. Cir. 1998), on which Defendant relies. In *Imo Industries*, the Third Circuit upheld the district court's dismissal for lack of personal jurisdiction because IMO could not demonstrate that Kiekert expressly aimed its tortious conduct at New Jersey. *Id.* at 268. In so holding, it pointed out that none of the meetings between Kiekert and IMO occurred in New Jersey and Kiekert mailed its letters to the wholly owned subsidiary in Italy and the investment firm in New York, not New Jersey. *Id.* at 267. Additionally, Kiekert never placed a phone call to New Jersey. *Id.* The Third Circuit reasoned that a "few calls or letters into the forum may be of only marginal import if the dispute is focused outside the forum." *Id.* at 268. Here, it is clear that the dispute between the parties occurred in New Jersey despite Defendant residing in and working from New York. The Complaint and Cruz Certification demonstrate that Defendant appeared in New Jersey and initiated calls with Cruz and other employees in New Jersey, contrary to the facts of *IMO Industries.*